# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BIOTE MEDICAL, LLC | § § | |
| v. | § § | Civil Action No. 4:18-cv-866 |
| | § | Judge Mazzant |
| KENT JACOBSEN, et al | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff BioTE Medical, LLC's ("BioTE") Application for Injunctive Relief (Dkt. #40). On May 30, 2019; June 27, 2019; and June 28, 2019; the Court held a preliminary injunction hearing on BioTE's application and thereafter instructed the Parties to file post-hearing briefing addressing the propriety BioTE's requested injunctive relief. The Court, having considered BioTE's application, the evidence presented at the hearing, the and Parties' briefing, finds that BioTE's request for an injunction should be denied.

## BACKGROUND

BioTE provides hormone replacement therapy to individuals who experience hormonal imbalances in their body through a method called Pellet Therapy, which inserts hormone pellets into the subcutaneous fat layer of the patient through an incision. BioTE's Pellet Therapy uses BioTE's custom and proprietary hormone pellet formula ("BioTE Formula"), which utilizes bio-identical and natural ingredients that act to maintain a patient's hormone levels throughout the day.

On December 13, 2018, BioTE filed the present action in United States District Court for the Eastern District of Texas (Dkt. #1) against Evexias/Farmakeio Defendants[1] and Individual

---
[1] The Evexias/Farmakeio Defendants include: Kent Jacobson, Jeni Guinn, Daniel D. DeNeui, Terri J. DeNeui, Michael S. Cole, Jeff DeNeui, Dustin C. DeNeui, John Thomas, MD, Gunter Mueller, Dan Mikals, Lisa Mikals,

Defendants[2] (Evexias/Farmakeio Defendants and Individual Defendants are referred to collectively as "Defendants"). BioTE alleges that Defendants are unlawfully manufacturing and selling unapproved new drugs under the false guise that they are engaged in lawful "compounding" and are engaging in false and misleading advertising and promotion of their unapproved new drugs, in violation of the Lanham Act, § 43, 15 U.S.C. § 1125(a)(1)(B). BioTE also alleges that Defendants conducted and continue to conduct their business through legitimate and illegitimate means in the form of an association-in-fact enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 (2018). The following is a summary of BioTE's allegations:

  a. Defendants misrepresented, in their marketing and advertising materials, that Defendant EvexiPEL had developed a proprietary hormone replacement pellet, when it had not;
  b. Defendants misrepresented, in their marketing and advertising materials, that Defendant Terri DeNeui had participated in the development of the allegedly proprietary hormone pellet; when she had not and when she could not legally do so;
  c. Defendants misrepresented, in their marketing and advertising materials, that providers and patients would have access to the exclusive EvexiPEL Pellet; when no such pellet existed;
  d. Defendants misrepresented, in their marketing and advertising materials, that Defendant Farmakeio had a federally required 503B "registration pending;" when there is no such thing and no paperwork for any such registration had been submitted;
  e. Defendants misrepresented, in their marketing and advertising materials, that the EvexiPEL Pellet "has been shown to produce better outcomes for patients too;" when there was nothing that showed any such thing;
  f. Defendants misrepresented, in their marketing and advertising materials, that the EvexiPEL Pellets with Triamcinolone resulted in far fewer extrusions;

---

Wendy Sandoval, Nicole Turcotte, Justin Graves, Robert Alan Harris, Martin Groves, Neal Rouzier, MD, Forget About It, Inc., Sutherland Solutions, LLC, Evexias Health Solutions, LLC, EvexiPEL, a Division of Evexias Health Solutions, LLC, Evexias Holding Co, Evexias HRT, LLC f/k/a Hormonal Health and Wellness Centers, LLC, Evexias Medical Centers, PLLC f/k/a Terri Suresh ACNP, PLLC a/k/a Hormonal Health Wellness & Skin Center a/k/a Hormonal Health Wellness and Aesthetics Center a/k/a Hormonal Health & Wellness, Evexias Management, LLC, Evexias Metrita-Columbia, LLC, Evexias-Anthem Columbia, LLC, Evexias-Anthem Alaska, LLC, North American Custom Laboratories, LLC a/k/a Farmakeio, Farmakeio Nutraceuticals, LLC, Farmakeio Outsourcing, LLC, and Nilus, LLC.
[2] The Individual Defendants include: Mark Burns, Jeff Hill, Dominic Verrilli, Kimberley Meegan, Andrea Jones

when there was no substantiating unbiased, viable "study" or even retrospective chart analysis to back it up, or even attempted;
g. Defendants misrepresented, in their marketing and advertising materials, that the EvexiPEL Pellets with Triamcinolone resulted in far fewer boosts; when there was no substantiating study, or even a retrospective chart analysis to back it up, or even attempted];
h. Defendants misrepresented, in their marketing and advertising materials, that the EvexiPEL Pellets with Triamcinolone resulted in quicker absorption; when there was no substantiating study, or even a retrospective chart analysis to back it up, or even attempted;
i. Defendants misrepresented, in their marketing and advertising materials, that the EvexiPEL Pellets with Triamcinolone resulted in more consistent absorption; when there was no substantiating study, or even a retrospective chart analysis to back it up, or even attempted;
j. Defendants misrepresented, in their marketing and advertising materials, that the EvexiPEL Pellets with Triamcinolone resulted in increased patient satisfaction; when there was no substantiating study, or even a retrospective chart analysis to back it up, or even attempted;
k. Defendants misrepresented, in their marketing and advertising materials, that the EvexiPEL Pellets with Triamcinolone resulted in increased practitioner satisfaction; when there was no substantiating study, or even a retrospective chart analysis to back it up, or even attempted;
l. Defendants misrepresented, in their marketing and advertising materials, that Farmakeio was "a leading pharmacy in the U.S."; when it had just been formed and started operating;
m. Defendants misrepresented, in their marketing and advertising materials, that Dan DeNeui and Terri DeNeui are "founders" of BioTE Medical when neither have ever owned an interest in the company and it was formed and operating before either of them ever associated with it.

(Dkt. #142 at p. 2–3).

On January 9, 2019, BioTE filed an Application for Injunctive Relief (Dkt. #40) requesting that the Court preliminarily enjoin Defendants from the following:

- Marketing, selling, distributing, prescribing and/or dispensing the Evexias Hormone Pellets;
  - Representing, orally or in writing, expressly or by implication, in any advertising, promotion, offering for sale, sale, prescription, consultation and/or patient visit that the Evexias Hormone Pellets: a) Are approved; b) Are safe; or c) Are as effective or more effective than competing products;
- Promoting or representing (orally or in writing, expressly or by implication) that Defendants' drugs are manufactured, marketed, distributed, sold and/or dispensed through a Section 503B certified pharmacy; and

- Representing (orally or in writing, expressly or by implication), holding out, promoting and/or marketing that Defendants, or any of them, are a Section 503B outsourcing pharmacy;
- Representing (orally or in writing, expressly or by implication), holding out, promoting and/or marketing that Defendants, or any of them, have a Section 503B certification pending or that the Section 503B certification process has been initiated or submitted.

(Dkt. #40 at p. 1). On February 1, 2019, Evexias/Farmakeio Defendants filed a response (Dkt. #69) and Individual Defendants filed a separate response (Dkt. #68). On February 15, 2019, BioTE filed a reply (Dkt. #76) to Evexias/Farmakeio Defendants' response and a reply (Dkt. #77) to Individual Defendants' response.

The Court held a preliminary injunction hearing on May 30, 2019; June 27, 2019; and June 28, 2019, during which the Parties presented evidence, including witness testimony. At the conclusion of the hearing, the Court instructed the Parties to file post-hearing briefing addressing the propriety BioTE's requested injunctive relief. On July 30, 2019, Individual Defendants filed an Opening Supplemental Briefing Regarding Plaintiff's Application for Injunctive Relief (Dkt. #136); BioTE filed its Post-Hearing Preliminary Injunction Closing Brief (Dkt. #138); and Evexias/Farmakeio Defendants filed their Preliminary Injunction Post-Hearing Brief (Dkt. #139). On August 5, 2019, BioTE filed responses to Evexias/Farmakeio Defendants and Individual Defendants' post hearing briefs (Dkt. #142 and 141, respectively). Further on August 5, 2019, Evexias/Farmakeio Defendants and Individual Defendants filed responses to BioTE's post-hearing brief (Dkt. #144 and 143, respectively).

**LEGAL STANDARD**

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any

4

damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

BioTE alleges that Defendants engaged in deceptive advertising in violation of the Lanham Act. The Lanham act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (2018). In the Fifth Circuit, the elements of a false advertising claim under the Lanham Act are: (1) the defendant made a false statement of fact about its product in a commercial advertisement; (2) the statement actually deceived or had a tendency to deceive a substantial segment of its audience; (3) the deception was material or likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result. *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 462 (5th Cir. 2001); 15 U.S.C. § 1125 (2018).

BioTE also alleges that Defendants conducted and continue to conduct their business through legitimate and illegitimate means in the form of an association-in-fact enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 (2018). "RICO creates a civil cause of action for '[a]ny person injured in his business or property by reasons of section 1962.'" *Brown v. Protective Life Ins*. Co., 353 F.3d 405, 406 (5th Cir. 2003) (alteration in original) (quoting 18 U.S.C. § 1964(c)). Common elements required to prove a violation of a subsection of § 1962 include: "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct or control of an enterprise." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)).

The Court finds the entry of a preliminary injunction unwarranted because BioTe has failed to show a substantial threat that it will suffer irreparable harm if the injunction is not granted. Accordingly, the Court finds it unnecessary to decide—and declines to opine on—whether BioTE has shown a (1) substantial likelihood of success on the merits of their claims; (2) the threatened injury outweighs any damage that the injunction might cause Defendants; and (3) the injunction will not disserve the public interest.

**Irreparable Injury**

BioTE's argues first that Defendants, in fact, made false statements and therefore irreparable harm is presumed for the purposes of a preliminary injunction in a Lanham Act case. Second, BioTE alleges irreparable harm in the form of lost market share.

To satisfy the irreparable harm element of a preliminary injunction, BioTE must demonstrate that if the Court denied the grant of a preliminary injunction, irreparable harm

would result. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

As discussed herein, BioTE fails in two ways to sufficiently show irreparable harm. First, BioTE conflates the injury element required to establish a false advertising under the Lanham Act with the distinct irreparable harm element required to support the issuance of a preliminary injunction and, in doing so, wrongly contends that the Court is to presume irreparable harm upon a finding that Defendants in fact made false statements. Second, BioTE fails to sufficiently support its contention of irreparable harm due to lost market share.

The Court explains below.

**i.    Presumption**

BioTE relies on the Second Circuit's decision in *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34 (2d Cir. 1988), and a decision from a court in the Northern District of Texas, *Rent–A–Ctr. W., Inc. v. Aaron Rents, Inc.*, No. CIV.A. 3:03–CV–1595–K, 2004 WL 813225, at *3 (N.D. Tex. Apr. 14, 2004), to support its argument that irreparable injury is presumed when a competitor makes comparative misrepresentations.

In *McNeilab*, the Second Circuit considered the harm arising out of a false, non-comparative advertising claim and false comparative advertising claim under the Lanham Act. *McNeilab*, 848 F.2d at 38. First, the Second Circuit opined that injury can be presumed from a false comparison because it will necessarily lead consumers to take a different view of the product then before they had seen the advertisement and therefore no proof of injury is necessary. *Id*. Therefore, a false advertisement necessarily results in irreparable harm because it diminishes the value of the targeted company's product or service in the mind of the consumer. *Id*. Conversely, when a false advertisement does not expressly or impliedly reference a

competitor's product, it would not have the diminishing effect that a comparative advertisement inflicts, thereby making the presumption speculative. *Id*.

Similarly, the court in *Rent–A–Ctr.* relied directly on *McNeilab* and held that "[i]n a false comparative advertising case, irreparable injury is presumed" reasoning that "[a] false comparison to a specific competitor or competing product unavoidably diminishes its value with respect to consumers." *Rent–A–Ctr.*, 2004 WL 813225 at *3.

Here, BioTE argues that Defendants made literal false or misleading comparisons and therefore injury must be presumed, including irreparable harm for the purposes of a preliminary injunction. The Court does not agree; even assuming that Defendants made literal false or misleading comparisons, it is not appropriate to presume irreparable harm.

*McNeilab* and *Rent–A–Ctr.* precede a string of decisions from the Supreme Court that repress the application of broad classification—such as presumptions of irreparable harm—in determining the propriety of injunctions. *See EBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006) (rejecting a perceived "categorical" rule that a finding patent had been infringed is sufficient for the issuance injunction presuming irreparable harm); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (holding that the "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction") (emphasis in original); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 135 (2014) (stating that while the plaintiff alleged enough to proceed under § 1125(a), it could not obtain injunctive relief "without evidence of injury proximately caused by Lexmark's alleged misrepresentations").

The Supreme Court in *Ebay* emphasized its incessant refusal of "invitations to replace traditional equitable considerations" with broad categorical dispositive on a grant or denial of an

injunction. *Ebay*, 547 U.S. at 392. In *Ebay*, the plaintiff, a drug the manufacturer, brought suit under Section 43(a) against the defendant, a manufacturer of a competitive drug, regarding the defendant's advertising that the defendant's drug did not have the adverse side effects caused by plaintiff's drug. *Id*. at 390–391. In considering the propriety of the plaintiff's motion for a permanent injunction, the district court recited the applicable four-factor test but ultimately denied the plaintiff's injunctive relief reasoning that a "plaintiff's willingness to license its patents" and "its lack of commercial activity in practicing patents would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue." *Id*. at 393. The Federal Circuit reversed the district court and "articulated a general rule, unique to patent disputes, that a permanent injunction will issue once infringement and validity have been adjudged." *Id*. at 393–394. The Supreme Court vacated the Federal Circuit's decision and stated that "[n]either the District Court nor the Court of Appeals below fairly applied these traditional equitable principles in deciding respondent's motion for a permanent injunction." *Id*. at 393. Namely, the district court "appeared to adopt certain expansive principles suggesting that injunctive relief could not issue in a broad swath of cases," and "[j]ust as the District Court erred in its categorical denial of injunctive relief, the Court of Appeals erred in its categorical grant of such relief." *Id*. at *394*.

Since the *Ebay* decision, numerous Circuit Courts have expressed concerns of the appropriateness of categorical rules—such as presumptions of irreparable harm—in requests for injunctive relief brought under the Lanham Act. *See, e.g., Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 161 (2d Cir. 2007); *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126–27 (4th Cir. 2011); *Herb Reed Enterprises, LLC v. Florida Entertainment*

*Management, Inc.*, 736 F.3d 1239, 1249–51 (9th Cir. 2013); *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008).

Most relevant here, the Fifth Circuit has refrained from "*expressly* adopting this presumption of irreparable injury." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (emphasis added). Indeed, the Fifth Circuit has affirmed district courts that have come out on contradictory ends of this issue. *Compare Eastman Chemical Company v. PlastiPure, Inc.*, 969 F. Supp. 2d 756, 767–68 (W.D. Tex. 2013), aff'd, 775 F.3d 230 (5th Cir. 2014) (abandoning a presumption of irreparable harm) *with Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2012) (finding that "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed.").

Here, BioTE argues that *Abraham*, like *McNeilab*, approves of a presumption in false adverting actions under the Lanham Act. BioTE's argument, however, is flawed in two ways.

First, *Abraham* considered a presumption of irreparable harm in the context of a trademark infringement action under in the Lanham Act rather than a false advertising claim. *See Abraham*, 708 F.3d at 627. BioTE has not cited, and the Court has not found, a case in which, unlike the Second Circuit, the Fifth Circuit has expressly or impliedly adopted or affirmed a presumption of irreparable harm in a false advertising action. In *Gruma Corp. v. Mexican Rests., Inc.*, Judge Schneider was face with an identical argument and highlighted the subtle, yet crucial, distinction between trademark infringement actions and false advertising claims under the Lanham Act:

> The Court notes that a recent opinion of a sister court declined to presume irreparable injury in a case involving a Lanham Act false-advertising claim despite the prevailing plaintiff's reliance on *Abraham. See Eastman Chem. Co. v. PlastiPure, Inc.*, ___ F. Supp. 2d ____, No. A-12-CA-057-SS, 2013 WL 4677702 at *8 (W.D. Tex. Aug. 30, 2013). But that case is distinguishable because the Fifth Circuit's false advertising precedent explicitly requires a plaintiff to prove

irreparable injury in addition to proving falsity. *Id.* (citing *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996)); *see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). But no Fifth Circuit precedent has explicitly required a proof of irreparable injury in a trademark infringement case; now, *Abraham* explicitly allows a presumption of irreparable injury. Furthermore, a plaintiff is not even required to prove actual confusion nor is provable damage required to establish a prima facie case. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (a cause of action for infringement of a legally protectable trademark exists where a person "uses (1) any reproduction, counterfeit, copy[,] or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution[,] or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." (citations omitted and alterations in original)); see also 5 McCarthy § 27:13. In other words, proof of injury is required in the underlying cause of action in a false advertising claim, thus a presumption of injury in a false advertising case would be inappropriate; but that is not the case in a trademark infringement claim. Therefore, the Court declines to adopt MRI's view that—despite the *Abraham* case—the Court may not presume injury when a plaintiff establishes a likelihood of confusion in a trademark infringement case.

No. 4:09-cv-488-MHS-ALM, 2013 WL 12134147, at *8 (E.D. Tex. Sept. 27, 2013).

This point is also is also stressed in *Healthpoint, Ltd. v. Stratus Pharm., Inc.*, wherein the court held:

> Although it is undisputed that Stratus and Healthpoint are obviously competitors in the debridement product field and Accuzyme and Kovia do compete for the same consumer dollar because Kovia exists to be substituted for Accuzyme, the advertising at issue, Accuzyme's label, is non-comparative. Therefore, even assuming Stratus is able to prove Accuzyme's label was literally false, because the Fifth Circuit has not held that a presumption of causation and harm is applicable to a product label and because other circuits have declined to apply the presumption in instances in which a direct competitor engages in false non-comparative advertising, the Court is unwilling to conclude as a matter of law that a presumption of causation and injury is applicable to the facts of the case. Stratus has cited no case on point, particularly a case where the defendant's product label is alleged to be the false advertisement. Because Stratus may not rely on a presumption of causation and injury and has presented no evidence to raise a genuine issue of material fact on that element of its false advertising claim, Healthpoint is entitled to summary judgment on Stratus' false advertising claim based on Accuzyme's label.

273 F. Supp. 2d 871, 885 (W.D. Tex. 2001).

Thus, without direction from the Fifth Circuit, the Court declines to extend a presumption of irreparable harm when a plaintiff shows a likelihood of confusion in a trademark infringement action as to apply to false advertising actions.

Second, even if the Court considered *Abraham* to apply in false advertising actions, the Fifth Circuit qualified a presumption of irreparable harm on a plaintiff showing a "likelihood of confusion." To determine whether a plaintiff has made a showing of likelihood of confusion, the Fifth Circuit has held that a court is to consider the following eight non-exhaustive factors:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion[,]' . . . [and] (8) the degree of care exercised by potential purchasers.

*Springboards to Edu., Inc. v. Hous. Indep. School Dist.*, 912 F.3d 805, 811 (5th Cir. 2019) (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017)).

BioTE has failed to make a prima facie case as to, or even address, these factors. BioTE would therefore fail to show likelihood of confusion—as to be entitled to a presumption of irreparable harm—and would fail to support the issuance of a preliminary injunction.

The Court turns now to BioTE's argument of irreparable harm in the form of lost market share.

### ii. Lost Market Share

BioTE alleges that it was irreparably harmed because Defendants signed up BioTE customers, thereby decreasing BioTE's market share.

A loss of market share due to false advertising can result in irreparable harm. *See generally Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("In a competitive industry where consumers are brand loyal . .

. loss of market share is a potential harm which cannot be redressed by a legal or an equitable remedy following a trial.") (internal citations omitted). BioTE must carry the burden on this element, and to do so "must demonstrate the threat of irreparable harm by independent proof, or no injunction may issue." *Randolph v. Nationstar Mortg., LLC*, No. 112165, 2012 WL 2450016, at *4 (E.D. La. June 27, 2012) (citing *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir.1989)). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985); *see also Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 532 (D. Md. 2010) ("Mere speculation about possible market share losses is insufficient evidence of irreparable harm."); *Z–Man Fishing Products, Inc., v. Renosky*, 790 F. Supp. 2d 418, 423 (D.S.C. 2011) (finding no irreparable harm where the moving party failed to provide "any evidence of lost goodwill, loss of market share, or price erosion").

"While courts are willing to consider a loss of customers or goodwill as a harm, the movant must come forward with evidence that such an injury is irreparable by showing that the loss cannot be measured in money damages." *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 697 (N.D. Tex. 2015) (citing *Millennium Restaurants Group, Inc. v. City of Dallas*, 181 F. Supp. 2d 659, 666 (N.D. Tex. 2001). "A party sufficiently proves that monetary damages are not adequate when it brings forward evidence, in the form of affidavits, declarations, or any other support, that shows imminent harm that is difficult to quantify." *Id*. BioTE has failed to meet this burden.

As to is allegation of lost market share, BioTE only cites to testimony that Defendants signed up some of BioTE's customers. BioTE, however, has failed to show how that loss cannot be measured by money damages. Indeed, Defendants argue that any loss to BioTE can be

13

directly measured from previous BioTE customers that signed up with Defendants can be readily identified, as well as any associated revenue. The Court does not opine on the ultimate veracity of Defendants' argument but finds that BioTE has failed to show that "monetary damages are not adequate" by way of "affidavits, declarations, or any other support, that shows imminent harm that is difficult to quantify." *Id.*; *see also Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *3 (E.D. Tex. Dec. 23, 2015), report and recommendation adopted, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016) ("Proof of lost market share and lost sales alone are insufficient to establish irreparable harm . . . .").

## CONCLUSION

It is therefore **ORDERED** that BioTE's Application for Injunctive Relief (Dkt. #40) is hereby **DENIED.**

**SIGNED this 21st day of August, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE