# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| BIOTE MEDICAL, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| KENT JACOBSEN, JENI GUINN, DANIEL D. DENEUI, TERRI J. DENEUI, MICHAEL S. COLE, JEFF DENEUI, DUSTIN C. DENEUI, JOHN THOMAS, MD, GUNTHER, MUELLER, DAN MIKALS, LISA MIKALS, MARK BURNS, WENDY SANDOVAL, NICOLE TURCOTTE, DOMINIC VERRILLI, KIMBERLY MEEGAN, ANDREA C. JONES, JUSTIN GRAVES, ROBERT ALAN HARRIS, MARTIN GROVES, NEAL ROUZIER, MD, MICHAEL SHEFFIELD, MD, FORGET ABOUT IT, INC., SUTHERLAND SOLUTIONS, LLC, EVEXIAS HEALTH SOLUTIONS, LLC, EVEXIPEL, a Division of Evexias Health Solutions, LLC, EVEXIAS HOLDING CO, LLC, EVEXIAS HRT, LLC f/k/a Hormonal Health and Wellness Centers, LLC, EVEXIAS MEDICAL CENTERS, PLLC f/k/a Terri Suresh ACNP, PLLC a/k/a f/k/a Terri Suresh ACNP, PLLC a/k/a Hormonal Health Wellness & Skin       Center a/k/a Hormonal Health Wellness and Aesthetics Center a/k/a Hormonal Health & Wellness, EVEXIAS MANAGEMENT, LLC, EVEXIAS METRITA-COLUMBIA, LLC, EVEXIAS-ANTHEM COLUMBIA, LLC, EVEXIAS-ANTHEM ALASKA, LLC, NORTH AMERICAN CUSTOM LABORATORIES, LLC a/k/a FARMAKEIO, FARMAKEIO NUTRACEUTICALS, LLC, FARMAKEIO OUTSOURCING, LLC,  and NILUS, LLC, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No.  4:18-cv-00866<br><br><br><br><br>EVEXIAS/FARMAKEIO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISQUALIFY |
| Defendants. | § | |

# EVEXIAS/FARMAKEIO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISQUALIFY

**ROGGE DUNN**

Texas State Bar No. 06249500
Email: dunn@trialtested.com

**GREGORY M. CLIFT**

Texas State Bar No. 00795835
Email: clift@roggedunngroup.com

**ROGGE DUNN GROUP, PC**

500 N. Akard Street, Suite 1900
Dallas, Texas 75201-6629
Telephone: (214) 888-5000
Facsimile: (214) 220-3833

**COUNSEL FOR EVEXIAS/FARMAKEIO DEFENDANTS**

**TO THE HONORABLE UNITED STATE DISTRICT COURT JUDGE:**

The Evexias/Farmakeio Defendants file this response to the motion to disqualify (Doc. 163) and would show the court:

1. BioTE fails to apprise this court of relevant controlling case law to decide this issue. Instead it ignores controlling case law, misleads this court (insofar as that is possible considering its decisions on this issue), and relies on non-binding cases and no facts.

2. BioTE fails to identify any privileged information, document, or otherwise taken by Havy Lam and shared with any Rogge Dunn Group, PC attorney (collectively, "RDG").

3. Without identifying a single privileged item, it contends RDG acted unethically and fails to provide any authority supporting the contention.

Instead, BioTE has filed a baseless motion with an affidavit used, again, as a vehicle to make the same baseless allegations in its complaint, and which were hashed out in the multi-day preliminary injunction hearing. For these reasons and those set out below, BioTE's motion must be denied and the court should consider an appropriate response to BioTE's frivolous filing and the omissions or flat out transgressions contained in it.

## BACKGROUND

The court by now is well-versed in the litigation involving these and other related parties. The following discusses briefly Lam's claims and RDG's representation of her. Lam retained RDG to assist with her termination from BioTE—a termination occurring after a meeting at the Four Seasons in Las Colinas on the day she was to return from FMLA leave.

Lam was an executive assistant. As BioTE points out she has a BA in management from Texas Tech. Her time at Tech included working at the golf course in the food and beverage department and as a cart attendant, and in apartment leasing. She was also a sales representative for Grainger. From January 2017 to her wrongful termination on August 9, 2019, she was the personal executive assistant to Donovitz. BioTE sets out her responsibilities:

> ==Current==: Personal/Executive Assistant to Gary
>
> - coordinate and **book airline, hotel and ground transportation** arrangements, both domestic and international.
>
> Experience in dealing with private aviation
>
> - manage business and personal calendar
>
> - confidential file management at the highest level
>
> - sending contracts through Adobe Sign
>
> - assists in current and future projects (i.e. edit papers, coordinated consensus meeting, studies, speaking events)
>
> - **coordinate and book travel** for VIP and guests, and his family
>
> - **run errands/tasks**
>
> ==Tampa Training and all refresher trainings:==
>
> - **Plan and coordinate all trainings** outside of Irving. Tampa, Puerto Rico, Mexico, all regional refresher trainings. Onsite contact for all
>
> - Signing contracts, scheduling of events, coordinate rooming lists, planning meals and catering, registration set up and break down, coordinate transportation, AV
>
> ==**Sun, Sea, & BioTE National Conference**==
>
> Co-coordinated SSB 2015 and 2016. Coordinated SSB 2017, 2018, and 2019
>
> Signing contracts, securing vendors, planning meals, schedule of events, manage attendee registration, decor, themes, giveaways, coordinate transportation for 400 people.
>
> **Doctor Dinners/ Media**
>
> - work with liaison to secure location for Dr. Dinner
>
> - sign contract and **banquet orders, menu planning** and set up AV for the events
>
> ==-Apply Gary's make-up when he has media appearances==

Doc. 163-2 (some emphasis added).  Nowhere in this list is she responsible for any litigation or reporting to any attorney.  Lam's work was largely, if not entirely, related to Donovitz's travel and BioTE event planning.

On July 7, 2019, Lam was admitted to Sacred Heart in Miramar, Florida for severe abdominal pain.  She remained in that hospital until July 17, 2019, when she returned to Dallas.  On July 18, 2019, she was admitted to Plano Presbyterian Hospital for continued treatment.  She was discharged on July 23.  During this time she was on FMLA leave.

She was informed her return date was August 9, but was asked to meet at the Four Seasons in Las Colinas instead of showing up at the office. At that time the CEO and director of HR met her and, after promising some options to return, sent her a termination letter by email later that day. Doc. 163-3. Importantly, the letter states:

> Should you still have in your possession the following property of BioTE, we can make arrangements for their return:
> - All training manuals, marketing materials, Dr. Donovitz books or other items expressly made with the BioTE Logo or trademarked as BioTE Medical intellectual property.

Doc. 163-3. No demand was made to return any confidential, proprietary, or privileged material and no evidence is presented to this court she possessed any to return.

Lam alleged she sustained harassment and discrimination while employed and, eventually, a wrongful termination. Other issues were alleged as well. After BioTE terminated her she alleged it failed to process properly her COBRA and return many of her personal items.

Lam was directed to RDG for advice. A demand was sent on or about October 8, 2019, generally alleging discrimination, harassment, retaliation, and a violation of the FMLA consistent with the allegations above. BioTE responded by email on October 14, 2019. Doc. 163-4. The case was mediated on November 18, 2019, and on November 22, 2019, the matter was resolved confidentially by an email agreement, with a more formal agreement to follow. On December 9, 2019, she certified "she ha[d] returned all BioTE Medical, LLC original materials and destroyed all other non-original materials." App. 01.

As set out above from BioTE's filing, Lam was not involved in litigation, hired to be part of a litigation team, or required to report to attorneys. She was an executive assistant handling travel

for Donovitz, and coordinating events for BioTE.[1] The entirety of Lam's potential lawsuit was about what she suffered during her employment and her firing. Nothing is presented to the court other BioTE litigation was related to her claims, discussed, or RDG received any privileged information or materials.

### A. LEGAL STANDARD FOR DISQUALIFICATION

As this Court has set out:

> The Fifth Circuit has "made clear that 'disqualification cases are governed by state and national ethical standards adopted by the court.'" *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.*, 972 F.3d 605, 610 (5th Cir. 1992)). In the Fifth Circuit, when considering disqualification of an attorney, district courts generally rely upon the following: (1) the local rules in the district; (2) American Bar Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001); *Ayus v. Total Renal Care, Inc.*, 48 F. Supp. 2d 714, 714 (S.D. Tex. 1999). Beyond the various rules and codes identified above, "[a] court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973)).

> In the Eastern District, "the standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court." Eastern District of Texas, Local Rule AT-2. In Texas, disqualification is a "severe remedy." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989). Motions to disqualify are subject to an exacting standard both to protect a party's right to counsel of choice as well as to discourage the use of such motions as a "dilatory trial tactic." *Id*.

*Henry v. City of Sherman*, No. 4:17-CV-00313, 2017 WL 6268744 at *1-2 (E.D. Tex. December

---

[1] BioTE's counsel filed his response to the demand with the court. Doc. 163-4. In it BioTE claimed Lam was offered "a different, comparable, position with the company" which she refused and "insisted, instead, that she remain in her position as Dr. Donovitz' executive assistant; seemingly more concerned about the loss of the perks of her job, including **first-class travel, luxury hotels, and extravagant room charges,** than on her purported issues with Dr. Donovitz." Doc. 163-4 (emphasis added). Counsel's response further supports her role and responsibilities at BioTE.

8, 2017).

Here, there are no legally cognizable grounds to disqualify RDG. Further, BioTE's failure to direct the Court's attention to legal authorities, including a Texas Supreme case and an opinion from this Court, that refute the side-switching and irrebuttable presumption arguments asserted by BioTE evidences that the filing of this motion not done in good faith, was nothing but a dilatory tactic, and the Court should consider a proper remedy against it or its counsel.

### B. LAM IS NOT A SIDE-SWITCHER WHOSE KNOWLEDGE IS PRESUMED TO HAVE BEEN SHARED WITH COUNSEL

BioTE asserts, without citation to the governing legal authority, that because Lam was the former Executive Assistant to BioTE's Chairman it gave her access to BioTE's confidential attorney client communications, attorney work product, and legal strategies involving the RDG Defendants, and that knowledge created an irrebuttable presumption that she shared BioTE's confidences with RDG which warrants disqualification. Doc. 163, p. 2; see e.g. *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 834 (Tex. 1994) (recognizing presumption that legal assistant who worked for other side of litigation had access to client confidences which might warrant disqualification of new employer); *In re American Home Products Corp.*, 985 S.W.2d 68, 74 (Tex. 1998) (same).

BioTE's assertion of the existence of an irrebuttable presumption that Lam received and shared privileged information with RDG does not support disqualification because the presumption does not apply to a former employee, like Lam, who is not part of a former employer litigant's legal team.[2] *See In re RSR Corporation*, 475 S.W.3d 775, 781 (Tex. 2015). Despite the clear applicability of *RSR*, BioTE failed to analyze it in its motion.

In *RSR*, the Texas Supreme Court summarized the matter as follows:

---

[2] Notably, Lam is not identified in any Rule 26 disclosures.

> This original proceeding concerns whether the trial court abused its discretion by disqualifying plaintiffs' counsel because they "worked so closely" with a defendant's former finance manager. Treating the finance manager like a side-switching paralegal, the trial court applied *In re American Home Products Corp.,* 985 S.W.2d 68 (Tex.1998) (orig. proceeding), and found plaintiffs' counsel should have screened him from participating in the case. **We hold the *American Home Products* screening requirement does not govern a fact witness with information about his former employer if ==his position with that employer existed independently of litigation and he did not primarily report to lawyers.== To the extent the fact witness discloses his past employer's privileged and confidential information, the factors outlined by *In re Meador,* 968 S.W.2d 346 (Tex.1998) (orig. proceeding), should guide the trial court's discretion regarding disqualification.** Because the trial court improperly disqualified plaintiffs' counsel under *American Home Products,* we conditionally grant mandamus relief.

*Id.* at 776.[3] The background of *RSR* reveals the bases for the disqualification were much more involved than this matter. In *RSR* Bickel & Brewer represented RSR and another entity against a Chilean manufacturer. The primary issue was the defendant was not paying under a contract. RSR sued in 2008. Herman Saborzo was the defendant's finance manager from April 2007 to April 2010 when he resigned. He was responsible, in part, for calculating the payments to RSR under the contract. The Texas Supreme Court noted he claimed his duties included:

- ensuring cash flow and financing, as well as ***calculating Inppamet's payments to RSR under the 2003 agreement***.
- He had access to data regarding Inppamet's financial statements, foreign trading, and government reports.
- "***When RSR requested an audit*** in 2009 concerning Inppamet's payments to RSR, ***Sobarzo gathered information and discussed the audit with Inppamet's lawyers and company officers.***"
- He also ***discussed litigation strategy*** with company officers, ***communicated with Inppamet's lawyers***, and ***reviewed invoices describing the attorneys' work.***

---

[3] The mandamus to the Texas Supreme Court was after former Texas Supreme Court Justice Deborah Hankinson ruled as a special master against disqualification, trial judge Carlos Cortez disagreed with her, and the Dallas Court of Appeals denied mandamus.

*Id.* at 777 (emphasis added). In addition to his role with the defendant, when he resigned he stole around 2.3 gigabytes of data "consisting primarily of emails—around 15,000 to 17,000 of them. The emails included some of Sobarzo's personal communications, as well as ***emails between Inppamet's lawyers, managers, and directors***." *Id.* (emphasis added).

Contrary to Sobarzo's litigation involvement and his taking of information, no factual allegation is made Lam, as an executive assistant focused on travel and events, was involved in any litigation (much less to this extent) or took anything with her (much less emails with the lawyers on the case.)

Even more contrary to this situation, Sobarzo then went on to ***work with*** Bickel & Brewer. For example, the decision notes:

- He met with the attorneys and traveled to New York or the Bickel & Brewer attorneys traveled to Chile.
- "The trial court found Sobarzo met with Bickel & Brewer's attorneys and consultants at least 19 times for a total of more than 150 hours."
- "Sobarzo ***supplied significant information regarding Inppamet, accusing Inppamet of underpaying RSR under the 2003 agreement***."
- "He ***discussed Inppamet's audit of the payments*** and even provided Bickel & Brewer a spreadsheet concerning the payment calculations. Bickel & Brewer attorneys looked on as Sobarzo displayed Inppamet documents on his computer, and BMAJ possesses a pen drive with many Inppamet documents."

Not only did Sobarzo provide extensive information to the attorneys, he insisted on compensation. He charged the attorneys $1,600 per day (which was formalized in an agreement) and, according to Inppamet, "the contract required BMAJ to pay Sobarzo for 30 hours of work per week, guaranteeing Sobarzo ***nearly $1 million*** by the time the contract's three-year term passed, in addition to other benefits." *Id.* at 778 (emphasis added). Obviously, no facts are presented to this court of anything near this type of activity.

In analyzing the matter, the Texas Supreme Court first specifically noted that for fact witnesses, the *Meador*[4] and not the *American Home Products* factors apply, stating:

> Applying the bright-line rule from *American Home Products* to fact witnesses instead of legal staff would limit informal discovery and fact-gathering. "Denial of access to such a person would impede an adversary's search for relevant facts...." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 100 cmt. g (Am. Law Inst. 2000). If attorneys abuse their freedom by eliciting privileged or confidential information from fact witnesses, then their conduct is subject to *Meador*. But *American Home Products* does not create a blanket rule against any contact with such fact witnesses, even if they were once employed by the opposing side and had contact with that side's attorneys.

*Id*. at 781.

The *RSR* court explained further that the presumptions which are appropriate for lawyers and legal staff were not appropriate for employees who "were not hired for litigation purposes and were not directly supervised by lawyers." *Id*. at 782.

It is undisputed Lam is not an attorney, was not a legal assistant or legal secretary, has never been supervised by attorneys, was never part of BioTE's legal team in the present case or any of the related cases, and was not hired for litigation purposes. Consequently, no irrebuttable presumption[5] exists Lam shared confidential or privileged information with the RDG and RDG

---

[4] *In re Meador*, 968 S.W.2d 346 (Tex. 1998)

[5] While it is conclusively presumed a legal assistant or paralegal who worked on a case received confidences and secrets, it is not conclusive that the legal staff shared confidential information with his new employer and the presumption may only be overcome by (1) "instruct[ing] the legal assistant 'not to work on any matter on which the paralegal worked during the prior employment, or regarding which the paralegal has information relating to the former employer's representation," and (2) "tak[ing] other reasonable steps to ensure that the paralegal does not work in connection with matters on which the paralegal worked during the prior employment." *RSR*, 475 S.W. 3d 780. (quoting *Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831, 835 (Tex.1994) (orig. proceeding)). Such "other reasonable steps" must include "formal, institutionalized screening measures that render the possibility of the nonlawyer having contact with the file less likely." *In re Columbia Valley Healthcare Sys., L.P.,* 320 S.W.3d 819, 826 (Tex.2010) (orig. proceeding).

cannot be disqualified.

In order to establish a case for disqualification here, ***BioTE must prove***, among other things, that Lam ***actually conveyed*** privileged information to RDG and the receipt of that information resulted in ***actual prejudice*** to BioTE. BioTE has not and cannot meet this high burden. *In re Meador*, 968 S.W.2d at 350 ("[A] court should not disqualify a lawyer for a disciplinary violation that has not resulted in actual prejudice to the party seeking disqualification.") BioTE has not provided any evidence Lam was in possession of or conveyed any privileged information to RDG.

The Texas Supreme Court in *Meador* set forth the applicable test to apply when a former employee is alleged to have **actually taken** and **conveyed** her former employer's privileged information to her attorney. In *Meador*, the court summarized the issue as follows:

> The issue in this original mandamus proceeding is whether the trial court abused its discretion by refusing to disqualify plaintiff's counsel. Defendants contend that the lawyer **improperly used privileged documents which the lawyer's client (in another lawsuit)** *secretly removed from defendants' offices*. We hold that, under the facts and circumstances of this case, the trial court did not abuse its discretion by refusing to disqualify the lawyer.

*Id*. at 348. (emphasis added). Meador had sued Conley, Lott, and Nichols Machinery Company ("CLN") for numerous claims including fraud, discrimination and breach of contract. *Id*. While Meador's claim was pending, Patricia Peterson was working for CLN's president and had access to his documents. *Id*. Peterson copied documents she found in the president's office, including a letter from CLN's attorneys because she discovered that CLN was potentially going to pressure her for false testimony. *Id*. Peterson admitted she would not have been permitted to copy the documents, but kept a copy to substantiate her own story. *Id*. Five months after quitting her job with CLN, Patterson consulted with Meador's attorneys about bringing her own claim against

CLN for sexual harassment and provided Meador's attorneys with a copy of the letter she had taken from CLN's president. *Id.* at 349. After learning that Patterson had provided Meador's attorneys with privileged documents, CLN moved to disqualify Meador's attorneys. *Id.*

In analyzing the appropriate test to apply, the Texas Supreme Court stated: "Indeed, we believe it is impossible to articulate a bright-line standard for disqualification where a lawyer, through no wrongdoing of his or her own, receives an opponent's privileged materials." *Id.* at 351. The court further explained:

> For example, situations may exist where the attorney does everything within his or her power to mitigate the harm from the disclosure, yet the privileged information is so sensitive that disqualification is necessary to ensure a fair trial. On the other hand, there may be situations where the disclosure may cause some prejudice to movant's claim, yet other factors, such as the movant's fault contributing to the disclosure or the harm to the nonmovant from disqualification of his or her attorney, may justify denial of the motion to disqualify. In sum, the trial court, giving due consideration to the importance of our discovery privileges, must consider all the facts and circumstances to determine whether the interests of justice require disqualification. In this exercise of judicial discretion, a trial court should consider, among others, these factors:
>
> 1) whether the attorney knew or should have known that the material was privileged;
>
> 2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;
>
> 3) the extent to which the attorney reviews and digests the privileged information;
>
> 4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;
>
> 5) the extent to which movant may be at fault for the unauthorized disclosure;
>
> 6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*Id*. at 351-52.

The *Meador* Court noted that factors 1, 2, 3, and 5 all favored disqualification because the attorney who received the confidential information should have known it was privileged, did not notify the opposing side, digested and used the information in his pleadings, and the party moving for disqualification was not at fault. *Id.* at 352. Even so, the Court held that disqualification ***was not appropriate*** because there was no prejudice to the moving party and disqualifying the non-movant's attorney would cause her serious hardship. *Id.*

Here, it is impossible for BioTE to establish any of the *Meador* factors because it has not provided ***any*** competent evidence to support its assertion that Lam disclosed privileged information to the RDG. Contrary to the above cases, no evidence is presented she took anything to share. BioTE relies on 7 paragraphs in the Declaration of Mark Hincher to support its motion to disqualify. Hincher's declaration is replete with conclusory, speculative and hearsay statements such as Lam "was privy to confidential information she obtained from Dr. Donovitz …among other things, … [about] the Lawsuits, and BioTE's legal strategies vis-à-vis the Lawsuit", she "had access to all information at BioTE", she "either read those communications [about the lawsuits] or had access to them", "she spoke with Dr. Donowitz about the prosecution of and defenses in the Lawsuits and knew his innermost thoughts about them", and she "communicated with BioTE's counsel about the Lawsuits." All of this is conclusory, hearsay, or pure speculation. Assuming, *arguendo,* that Lam was privy to confidential or privileged information, the motion to disqualify fails because none of these statements or anything else in the declaration establish that any of this alleged confidential or privileged information was actually disseminated to RDG.

Specifically: (1) there are *no documents* identified with anything that could be arguably attorney-client or work-product privileged communications in Lam's possession and no evidence

Lam actually shared any privileged information with RDG; (2) because no privileged documents and no privileged information was shared, counsel had no duty to notify BioTE's counsel of their possession of same or respond to his demand counsel withdraw from the case;[6] (3) likewise, RDG did not review *any* privileged documents or receive any privileged information; (4) BioTE did not suffer any prejudice because no privileged information was shared with RDG; (5) as there are no documents and no privileged information was shared, the question of fault or responsibility for disclosing privileged information does not exist; and (6) Defendants will suffer undue hardship if they are not allowed to proceed with their counsel of choice who have unique knowledge and skills – exactly why Defendants chose to hire them. As the court is aware, RDG is involved in a number of lawsuits involving BioTE for years. Because BioTE did not establish Lam actually disseminated any privileged information to RDG, it cannot establish disqualification is warranted.

### C.  NO APPEARANCE OF IMPROPRIETY EXISTS

BioTE maintains that an appearance of impropriety exists because Lam has "all of BioTE's attorney client communications, attorney work product and legal strategies regarding the RDPC Defendants" and "there is an irrebuttable presumption she shared privileged information" with RDG counsel and every other lawyer in the firm. Doc. 163, pps. 2, 7, and 8. BioTE further claims that RDG's dual representation of Lam and the RDG Defendants creates an appearance of impropriety that warrants disqualification. BioTE is wrong on both counts.

---

[6] BioTE contends RDG "knew and knows that it has BioTE's privileged and confidential information through Lam." Doc. 163, p. 10, ¶ 22. If further contends RDG "not only failed to promptly notify BioTE that RDPC has BioTE's privileged and confidential information through RDPC's representation of Havy Lam, RDPC has never followed up at all." Doc 163, p. 11, ¶ 23. First, BioTE fails to identify any confidential or privileged information the attorneys received. Second, no allegation is made any purportedly received information was reviewed or used. Third, the "request" from BioTE's counsel set forth the wrong legal standard and did not ask for the return of anything but, instead, demanded "**confirmation that *you and your firm will withdraw* from the other cases to avoid motions to disqualify from having to be filed in those cases.**" Doc. 163-4 (emphasis added).

As to the appearance of impropriety, this Court has stated:

> "Canon 9 of the Code of Professional Responsibility provides: 'A Lawyer Should Avoid Even the Appearance of Professional Impropriety.'" *McCuin v. Texas and Light Co.*, 714 F.2d at 1265 (5th Cir. 1973). Because this is a canon of professional responsibility, it is not a mandate, but an attorney may still be disqualified on this principle if it violates the prescription. *Id.* In order to determine if an attorney's conduct gives the appearance of impropriety, the court should engage in a two-step inquiry. *Id.* "First, the district court should inquire whether there is 'at least a reasonable possibility that some ***specifically identifiable*** impropriety' has occurred." *Id.* (citing *Woods*, 537 F.2d at 813) (emphasis added). "Second, the court should consider whether the likelihood of public suspicion of, or obloquy regarding, such an impropriety is sufficiently strong to outweigh the interest of the party being represented by counsel of its choice." *Id.* (citing *Woods*, 537 F.2d at 813).

Henry, 2017 WL 6268744 at *5 (emphasis added).

Here, there is absolutely no evidence a specifically identifiable impropriety occurred. As previously discussed, under the *RSR*[7] case the mere fact that Lam worked for BioTE as an Executive Assistant does not serve as a basis to apply an irrebuttable presumption that privileged information was shared and conclude that impropriety occurred. *RSR*, 968 S.W.2d 782 (holding the presumptions which are appropriate for lawyers and legal staff are not appropriate for those "not hired for legal purposes and [] not directly supervised by lawyers," which is the case here). Further, there is absolutely no evidence that Lam possessed and shared any privileged information with RDG counsel that would warrant disqualification under the *Meador* analysis. Finally, there is

---

[7] *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651 (M.D. Fla. 1992), the case relied on by BioTE, is not persuasive authority. First, it is a non-Texas and non-Fifth Circuit case and is contrary to the Texas Supreme Court's holding in *RSR* with respect to communications with non-litigation related former employees. In addition, unlike here, the attorney sought to be disqualified was accused of behavior that gave the appearance of professional impropriety for making payments to the former employee to induce him to disclose privileged information and payments to the former employee for his factual testimony under the pretext of retaining him as a "trial consultant.". In fact, the Texas Supreme Court in *Meador* rejected the applicability of *Rentclub* on that very basis. *Meador*, 968 S.W. 2d at 354 ("the federal cases on which CLN relies are also distinguishable. They either involve an attorney who acted improperly to obtain the other side's confidences, *see Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651, 654 (M.D. Fla. 1992), or an employee with extensive litigation responsibilities who switched sides in the litigation (citations omitted.))"

no evidence that RDG counsel acted improperly to obtain Plaintiff's confidences. As such, there is no legal or factual basis to support an appearance of a specifically identifiable impropriety.

The other basis BioTE asserts creates the appearance of impropriety is the dual representation of Lam by RDG counsel in an unrelated case and the attorneys' representation of some of the Defendants in this case. As this court and another in the Eastern District of Texas have found there is nothing inherently wrong with dual representation. *See Henry v. City of Sherman, Texas*, No. 4:17-CV-00313, 2017 WL 6268744 (E.D. Tex. 2017) (Mazzant) (this court denied disqualification of the plaintiff's counsel who represented both the plaintiff, as well as, a current employee of the defendant in a separate lawsuit against the defendant); *Jackson v. City of Sherman*, No. 4:16-CV-774-KPJ, 2018 WL 621259 (E.D. Tex. January 30, 2018) (same). In both of those decisions a major consideration was the lack of evidence of impropriety. This is not a case that warrants a presumption of an appearance of impropriety because Lam, at most, is merely a former employee of BioTE involved in travel and event arrangements, and there is absolutely no evidence she actually was in possession of or disclosed any privileged information to RDG counsel or that BioTE has actually suffered prejudice. Accordingly, the court must find that there is no appearance of impropriety, and the court does not need to move to the second step of the analysis. Consequently, the motion for disqualification must be denied.

### D. ALTERNATIVE REQUEST FOR DISCOVERY

BioTE makes broad, conclusory allegations including Lam's access to and review of allegedly privileged materials, her role at BioTE, her possession of privileged and confidential information, among other issues. Insofar as any of these improper, conclusory, and hearsay allegations are considered by the court, the Evexias/Farmakeio Defendants request the opportunity

to depose Donovitz, Hincher, and a corporate representative knowledgeable, generally, of BioTE's IT infrastructure and access credentialing (as well as receiving related documents).

## CONCLUSION

Disqualification is a severe remedy. BioTE fails to carry its burden and present evidence meeting the proper legal standards, and largely ignores them. RDG represented an executive assistant tasked with travel and event planning in an employment dispute that resolved in a very short amount of time. As a former employee, no legal basis exists prohibiting RDG from interviewing Lam, if she was a fact witness at all, which she is not. Lam is not an attorney and not part of the legal team. BioTE's motion is another tactic to unnecessarily increase costs and harass these parties. Further, disqualification is a harsh remedy as the court knows. In this suit alone, BioTE seeks $10,000,000 plus other damages. RDG is involved in a number of cases and disqualification will disproportionately impact and damage the Defendants.

Therefore, the Evexias/Farmakeio Defendants request the court deny the motion to disqualify, impose an appropriate sanction against BioTE or its counsel for failing to advise the court of relevant, binding authority on the issue presented, and for such other and further relief to which these defendants may be entitled.

Respectfully submitted,

_____
**ROGGE DUNN**

Texas State Bar No. 06249500
Email: dunn@trialtested.com

**GREGORY M. CLIFT**

Texas State Bar No. 00795835
Email: clift@roggedunngroup.com

**ROGGE DUNN GROUP, PC**

500 N. Akard Street, Suite 1900
Dallas, Texas 75201-6629
Telephone: (214) 888-5000
Facsimile: (214) 220-3833

**COUNSEL FOR EVEXIAS/FARMAKEIO DEFENDANTS**

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing instrument has been served upon counsel in accordance with the Rules, this  9th   day of     January          20 20   .

| | |
|---|---|
| Ryan K. Lurich, Esq.<br>Friedman & Feiger, LLP<br>5301 Spring Valley Road<br>Suite 200<br>Dallas, TX 75254 | ☑ **VIA ECF** |
| K. Patrick Babb<br>Fox Rothschild, LLP<br>Two Lincoln Centre<br>5420 LBJ Freeway, Suite 1200<br>Dallas, TX 75240 | ☑ **VIA ECF** |

                                                        **GREGORY M. CLIFT**