# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BIOTE MEDICAL, LLC, <br>     *Plaintiff*, <br> <br> v. <br> <br> KENT JACOBSEN, et al. <br>     *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 4:18-cv-866 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion and Brief for Order Disqualifying Rogge Dunn Group, PC as Counsel of Record for its Clients Herein (Dkt. #163). After consideration, the Court is of the opinion that the motion should be **DENIED.**

### BACKGROUND

**I.    Factual Summary**

Havy Lam is a former employee of Plaintiff BioTE Medical, LLC. Specifically, she was formerly the personal executive assistant to Dr. Gary Donovitz, BioTE's founder. Ms. Lam's job duties as Dr. Donovitz's personal executive assistant were as follows:

- She coordinated and booked airline, hotel and ground transportation arrangements, both domestic and international for Dr. Donovitz;

- She managed Dr. Donovitz's business and personal calendar;

- She was responsible for confidential file management at the highest level;

- She sent contracts through Adobe Sign;

- She assisted with current and future projects (i.e., edited papers, coordinated consensus meetings, coordinated speaking events);

- She coordinated and booked travel for VIPs, guests and their families;

- For BioTE's Tampa training and all refresher trainings, she

    o Planned and coordinated all trainings outside of Irving, which included Tampa, Puerto Rico, Mexico and all regional refresher trainings;

    o Signed contracts, secured vendors, planned meals, scheduled events, coordinated rooming lists, planned meals and catering, coordinated registration set-up and break-down, and coordinated transportation;

- For the Sum, Sea & BioTE National Conferences, she

    o Co-ordinated these conferences in 2015 and 2016, and coordinated them herself in 2016-2019; and

    o Signed contracts, secured vendors, planned meals, scheduled events, managed attendee registration, décor, themes, giveaways, coordinated transportation for 400 people;

- For the Doctor Dinners and Media Coverage, she

    o Secured the location for the events;

    o Signed contracts, secured vendors, planned menus.

(Dkt. #163-1).

From July 7, 2019 until July 23, 2019, Ms. Lam was on leave as provided by the Family and Medical Leave Act ("FMLA") (Dkt. #169). Shortly thereafter, on August 9, 2019, BioTE terminated Ms. Lam's employment and sent her a termination letter stating the following:

> Should you still have in your possession the following property of BioTE, we can make arrangements for their return:
>
>> All training manuals, marketing materials, Dr. Donovitz books or other items expressly made with the BioTE Logo or trademarked as BioTE Medical intellectual property.

(Dkt. #169).

In connection with her termination, Ms. Lam sought legal counsel from Rogge Dunn Group, PC ("Rogge Dunn") (Dkt. #169). On or around October 8, 2019, Ms. Lam, through her attorneys, sent a demand to BioTE generally alleging discrimination, harassment, retaliation, and

2

a violation of the FMLA (Dkt. #169). The parties mediated on November 18, 2019, and on November 22, 2019, they resolved the dispute confidentially by email agreement (Dkt. #169). On December 9, 2019, Ms. Lam certified that she had returned all BioTE original materials and destroyed all other non-original materials, though it is not clear whether she did this on her own or whether it was done pursuant to a demand by BioTE (Dkt. #169).

The dispute central to this motion arises from the fact that, prior to Ms. Lam's lawsuit against BioTE, BioTE had initiated the present suit against, among others, a number of defendants represented by Rogge Dunn (the "Rogge Dunn Defendants"[1]). Thus, BioTE filed this motion complaining that Rogge Dunn should be disqualified from representing the Rogge Dunn Defendants in the present case because it had previously represented Ms. Lam—a former BioTE employee—in her FMLA action against BioTE.

## II. Procedural History

On December 6, 2019, BioTE filed the present motion to disqualify Rogge Dunn (Dkt. #163). On January 9, 2020, Evexias/Farmakeio Defendants filed a response (Dkt. #169). On January 24, 2020, BioTE filed a reply (Dkt. #173).

## LEGAL STANDARD

The Fifth Circuit has "made clear that 'disqualification cases are governed by state and national ethical standards adopted by the court.'" *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.*, 972 F.3d 605, 610 (5th Cir. 1992)). In the

---

[1] The Rogge Dunn Defendants include: Kent Jacobson, Jeni Guinn, Daniel D. DeNeui, Terri J. DeNeui, Jeff DeNeui, Dustin C. DeNeui, John Thomas, MD, Gunter Mueller, Dan Mikals, Lisa Mikals, Wendy Sandoval, Nicole Turcotte, Justin Graves, Robert Alan Harris, Martin Groves, Neal Rouzier, MD, Forget About It, Inc., Evexias Health Solutions, LLC, EvexiPEL, a Division of Evexias Health Solutions, LLC, Evexias Holding Co, Evexias HRT, LLC f/k/a Hormonal Health and Wellness Centers, LLC, Evexias Medical Centers, PLLC f/k/a Terri Suresh ACNP, PLLC a/k/a Hormonal Health Wellness & Skin Center a/k/a Hormonal Health Wellness and Aesthetics Center a/k/a Hormonal Health & Wellness, Evexias Management, LLC, Evexias Metrita-Columbia, LLC, Evexias-Anthem Columbia, LLC, Evexias-Anthem Alaska, LLC, North American Custom Laboratories, LLC a/k/a Farmakeio, Farmakeio Nutraceuticals, LLC, Farmakeio Outsourcing, LLC, and Nilus, LLC.

Fifth Circuit, when considering disqualification of an attorney, district courts generally rely upon the following: (1) the local rules in the district; (2) the American Bar Association's ("ABA") Model Rules of Professional Conduct; and (3) the state rules of conduct. *See Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001); *Ayus v. Total Renal Care, Inc.*, 48 F. Supp. 2d 714, 714 (S.D. Tex. 1999). Beyond the various rules and codes identified above, "[a] court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973)).

In the Eastern District, "the standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court." Eastern District of Texas, Local Rule AT-2. In Texas, disqualification is a "severe remedy." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989). Motions to disqualify are subject to an exacting standard both to protect a party's right to counsel of choice as well as to discourage the use of such motions as a "dilatory trial tactic." *Id.*; TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 10. "The party seeking disqualification bears the burden of proving that disqualification is warranted." *Frito-Lay North America v. Medallion Foods, Inc.*, 2012 WL 12893877, at *1 (E.D. Tex. Oct. 24, 2012) (citing *Koch Ref. Co. v. Boudreau*, 85 F.3d 1178, 1181 (5th Cir. 1996)). "[T]hat burden is heavy." *U.S. v. Aleman*, 2004 WL 1834602, at *1 (W.D. Tex. Aug. 12, 2004) (citing *United States v. Phillips*, 952 F. Supp. 480, 482 (S.D. Tex. 1996)).

## ANALYSIS

BioTE moves the Court to disqualify Rogge Dunn. BioTE recognizes that there is no specific disciplinary rule that Rogue Dunn has violated. The thrust of BioTE's argument, however, is that Rogge Dunn should nevertheless be disqualified from representing any of the Rogue Dunn Defendants because Ms. Lam "knows BioTE's legal strategy against the [Rogue Dunn] Defendants and, now that [Rogue Dunn] represents Havy Lam against BioTE, [Rogue Dunn] knows what Havy Lam knows. [Rogue Dunn] knows BioTE's legal strategy against the [Rogue Dunn] Defendants" (Dkt. #163). BioTE bases this argument on the assumption that "every lawyer at [Rogue Dunn], including the lawyers representing the [Rogue Dunn] Defendants against BioTE in the Lawsuits, now knows all of Havy Lam's client confidences with respect to BioTE's legal strategies against the [Rogue Dunn] Defendants." *Id.*

This argument depends on BioTE's characterization of Ms. Lam as the functional equivalent of a side-switching paralegal, rather than as the equivalent of a fact witness, which if true would carry with it certain legal ramifications under the Texas Supreme Court's decisions in *American Home Products* and *RSR Corp*. *See In re RSR Corp.*, 475 S.W.3d 775 (Tex. 2015); *In re American Home Products Corp.*, 985 S.W.2d 68 (Tex. 1998).

In *American Home Products*, a law firm hired its opposing counsel's former paralegal to work on a certain legal matter. *American Home Products*, 985 S.W.2d at 71–72. The paralegal's role with the law firm was the same as that of "a legal assistant as a full-time employee of a law firm or . . . a legal assistant in the legal department of a party." *Id.* at 74. Opposing counsel filed a motion to disqualify the law firm that hired the paralegal, which the trial court denied. *Id.* at 72. In deciding whether the trial court had abused its discretion, the Texas Supreme Court held that two presumptions apply. *Id.* at 74–75. First, the Texas Supreme Court held that in such a situation,

there is a conclusive presumption that the legal assistant or paralegal obtained her original employer's confidential information.  *Id.*  Second, it held that there is a rebuttable presumption that the information was shared with the new employer.  *Id.*  The second presumption can be overcome only by (1) instructing the legal assistant "not to work on any matter on which the paralegal worked during the prior employment, or regarding which the paralegal has information relating to the former employer's representation," and (2) "tak[ing] other reasonable steps to ensure that the paralegal does not work in connection with matters on which the paralegal worked during the prior employment, absent client consent."  *Id.* at 75 (quoting *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 835 (Tex. 1994)).

Several years later, in *RSR Corp.*, the Texas Supreme Court held that the *American Home Products* standard does not apply to fact witnesses whose "position with [their] former employer existed independently of litigation, and [whose] function was not primarily to report to lawyers."  *See RSR*, 475 S.W.3d at 780.  The Texas Supreme Court explained that *American Home Products* has traditionally applied only to paralegals, legal assistants, or other nonlawyers who are directly supervised by lawyers and are retained to assist with litigation.  *Id.*  Thus, in evaluating the question of disqualification, courts look at "the side-switching employee's duties at the original employer," with the inquiry focusing on "whether the tasks 'performed were the same as those that might be executed by a legal assistant as a full-time employee of a law firm or by a legal assistant in the legal department of a party.'"  *Id.* at 781 (quoting *American Home Products*, 985 S.W.2d at 74).

Here, Ms. Lam was Mr. Donovitz's personal executive assistant and appears to have been responsible primarily for coordinating Mr. Donovitz's schedule and for event planning.  It does not appear from her description of her job duties that Ms. Lam served in a role resembling that of a paralegal, legal assistant, or nonlawyer directly supervised by lawyers and retained to assist with

litigation.  To be sure, in his affidavit, Mr. Hincher claims Ms. Lam was "privy to confidential information she obtained from Dr. Donovitz and BioTE's Board of Directors about, among other things, BioTE's business operations, business strategies, the [Rogge Dunn] Lawsuits, and BioTE's legal strategies vis-à-vis the [Rogge Dunn] Lawsuits" (Dkt. #163-1).  But this does not change the analysis; the inquiry concerns what Ms. Lam's primary job duties were, not what information she may have been privy to at one point or another.  Accordingly, Ms. Lam is more like a fact witness than a paralegal, and the *American Home Products* presumptions therefore do not apply here.  Thus, Ms. Lam is not presumed to have possessed confidential information or presumed to have shared that information with Rogge Dunn.  It is BioTE's burden to prove that.

Without the presumptions from *American Home Products*, BioTE's argument for disqualifying Rogge Dunn fails.  BioTE has not provided any tangible evidence showing that Ms. Lam possessed any of BioTE's confidential or privileged information, nor has it shown that she furnished any confidential or privileged information to Rogge Dunn.  In this sense, BioTE's discussion of the *Meador* factors is inapposite.  *See In re Meador*, 968 S.W.2d 346 (Tex. 1998). *Meador* applies only when attorneys receive an opponent's privileged materials outside the normal course of discovery.  *See In re RSR Corp.*, 475 S.W.3d 775, 779 (Tex. 2015) (discussing the *Meador* factors that courts consider in determining when "a lawyer who has been privy to privileged information improperly obtained from the other side must be disqualified").  Because BioTE failed to provide any specific confidential or privileged information obtained by Rogge Dunn outside the normal course of discovery, the *Meador* factors do not apply here.

Accordingly, the Court is of the opinion that BioTE did not carry its heavy burden of proving that disqualification is warranted; its motion to disqualify Rogge Dunn should therefore be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion and Brief for Order Disqualifying Rogge Dunn Group, PC as Counsel of Record for its Clients Herein (Dkt. #163) is hereby **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 29th day of May, 2020.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE